## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| **ACADIAN MEDICAL CONSULTANTS, LLC**<br>**Plaintiff,**<br><br>**v.**<br><br>**INNOVATIVE GLOBAL, LLC AND INNOVATIVE SUITES, LLC**<br>**Defendants.** | **NUMBER:**<br><br>**DISTRICT JUDGE**<br><br>**MAGISTRATE JUDGE** |

## VERIFIED COMPLAINT

1.     Acadian Medical Consultants, LLC respectfully files this Verified Complaint against Innovative Global, LLC and Innovative Suites, LLC d/b/a Insite, alleging as follows:

## PARTIES

2.     Acadian Medical Consultants, LLC (hereinafter "Acadian" or "Acadian Medical"), Complainant herein, is a limited liability company organized under the laws of the State of Louisiana and which is domiciled in the State of Louisiana based on the residency of its members for the purpose of determining diversity of citizenship under 28 U.S.C. § 1332. Acadian Medical Consultants, LLC, is a single member entity with its sole member being Susan Reyes, an individual domiciled in the State of Louisiana. Acadian is therefore a citizen of the State of Louisiana based on the residency of its sole member for the purpose of determining diversity of citizenship under 28 U.S.C. § 1332.

1

3.     Made Defendant in Acadian Medical Consultants, LLC's Verified Complaint is Innovative Global, LLC (hereinafter "Innovative" or "Innovative Global" or, collectively along with Innovative Suites, LLC referred to as "Defendants"), a limited liability company organized under the laws of the State of Florida that is licensed to do and is doing business in the State of Florida and which, on information and belief, is a citizen of the States of Florida and/or Georgia based on the residency of its members for the purpose of determining diversity of citizenship under 28 U.S.C. § 1332. Innovative Global, LLC is, on information and belief, a wholly owned subsidiary of Campfire Creations, LLC (hereinafter "Campfire Creations"), a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Georgia. Campfire Creations is, on information and belief, a citizen of the States of Florida and/or Georgia based on the residency of its members for the purpose of determining diversity of citizenship under 28 U.S.C. § 1332.

4.     Made Defendant in Acadian Medical Consultants, LLC's Verified Complaint is Innovative Suites, LLC d/b/a Insite (hereinafter "Insite" or, collectively along with Innovative Global referred to as "Defendants"), a limited liability company organized under the laws of the State of Florida that is licensed to do and is doing business in the State of Florida and which, on information and belief, is a citizen of the States of Florida and/or Georgia based on the residency of its members for the purpose of determining diversity of citizenship under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

5.     Subject matter jurisdiction is proper in this Court under diversity jurisdiction pursuant to 28 U.S.C. § 1332, as this matter involves parties that are completely diverse in citizenship and the amount in controversy exceeds the sum of $75,000.00.

6.      Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## FACTS

### Background Information and Acadian's Connection to Defendants Following the Onset of COVID-19 Pandemic

7.      Acadian Medical is a medical supply company based in River Ridge, Louisiana, a suburb of New Orleans.

8.      Acadian Medical has been in business since 2010 and is a certified minority women owned business, maintaining certifications from the Minority Business Enterprise (MBE), Women Owned Small Business (WOSB), Women's Business Enterprise National Council (WBENC-South), National Minority Supplier Development Council (NMSDC-Southern Region), Louisiana Economic Development-Division of Small and Emerging Business Development (SEBD and LED), and other groups.

9.      Prior to the COVID-19 Pandemic, Acadian Medical was a provider of radiation-focused personal protective equipment (PPE).

10.     In the early part of 2020, the COVID-19 Pandemic swept the globe, disrupting every aspect of society.

11.     At the same time, hospitals were short of supply stockpiles needed to prepare for what they anticipated would be a surge of infections and hospitalizations.

12.     Acadian was approached by several existing hospital and medical facility customers for sourcing non-radiation PPE.

13.     Acadian Medical stepped to the challenge to provide this type of non-radiation PPE.

14.     Acadian contacted various suppliers and distributors on behalf of hospitals, hospital systems, various universities, churches, schools, and correctional facilities to source non-radiation PPE. Included among Acadian's many clients at the time were American Airlines, Caesars Entertainment, MGM Casinos, the State of Maryland, and the State of Louisiana.

15.     Some of the PPE Acadian was hired to source included medical masks, surgical masks, KN95 facemasks, surgical gowns, face shields, thermometers, sanitizers, and other equipment and supplies.

16.     Trinity Healthy System, one of Acadian's long time contracted health systems, introduced and connected Acadian with Innovative Global to fulfill some of its purchases as Trinity had purchased several million dollars' worth of PPE from this new supplier of PPE supplies (Innovative Global).

17.     Generally, to make a purchase, Acadian would send a Purchase Order to Innovative Global, which would respond back with its own Invoice for the same corresponding order.

18.     All of the business transactions between Acadian and Innovative took place during the month of April 2020, when all Purchase Orders were produced, with the delivery of goods to take place through May of 2020.

19.     Unbeknownst to Acadian at the time, on information and belief, Insite was the actual importer of the PPE that was to be or was in fact ordered from China as shown on Innovative Global's invoices.

20.     Further, Insite would collect payment on behalf of Innovative from Acadian for its orders placed with Innovative.

21.     At all times relevant hereto, any payments made by Acadian were paid to Insite as the agent for Innovative Global. Insite is (or was) therefore in receipt of all sums paid by Acadian that are at issue in this dispute.

**Order of 300,000 KN95 Masks**

22.     On April 14, 2020, Acadian sent Innovative purchase order AMC3853AC in the amount of $600,000.00 for the purchase of 300,000 KN95 masks. Innovative, through its agent Insite, sent its own corresponding Invoice ACM2022 for the same goods. This order shall hereinafter be referred to as the "KN95 Order."

23.     Innovative's Invoice ACM2022 included the following text: "FOB CHINA-CLIENT TO PROVIDE UPS SHIPPING NUMBER." Invoice ACM2022 shows:

| Description | Quantity | Unit Price | Amount USD |
|---|---|---|---|
| 300K KN95 MASKS | 300,000.00 | 2.00 | 600,000.00 |
| $300,000 NON REFUNDABLE DEPOSIT DUE IMMEDIATELY $300,000 BALANCE DUE BEFORE DELIVERY OF GOODS | | | |
| FOB CHINA-CLIENT TO PROVIDE UPS SHIPPING NUMBER | | | |

24.     "FOB CHINA" is a term of art (known as an "Incoterm") from the International Chamber of Commerce, standing for "**F**ree **O**n **B**oard."

25.     "Incoterms" are a series of terms used in international commercial transactions where the transport of goods is involved.

26.     Innovative's use of the Incoterm "FOB CHINA" is pivotal to the determination of this dispute.

27.     "FOB CHINA" means that the seller of the goods (Innovative) must load the goods on board a ship, train, or truck nominated by the buyer (Acadian).

5

28.     In a standard transaction such as this one, Acadian would pay for shipping at the method of its choice (under the Invoice ACM2022 at issue here, Acadian was to provide its UPS number and/or arrange for freight carrier and directly pay for the shipping to the 3rd party carriers such as UPS or Averitt Express).

29.     Once this was accomplished, Innovative was to hand over the goods (KN95 masks) to the method of choice (here with this order UPS), at which point ownership would transfer to Acadian. Acadian would then be responsible for all for all shipping costs going forward.

30.     On April 15, 2020, the day after sending its purchase order, Acadian emailed its UPS International Account Number to Innovative.

31.     Camie Dunbar with Innovative emailed Acadian on April 15, 2020 confirming receipt of Acadian's shipping number:

---

Monday, December 14, 2020 at 16:35:12 Central Standard Time

**Subject:**   Re: Wire Request
**Date:**      Wednesday, April 15, 2020 at 6:26:57 PM Central Daylight Time
**From:**      Camie Dunbar <camie@innovativegroup.agency>
**To:**        susan acadianmed.com <susan@acadianmed.com>, Jim Freudenberg
               <jim@innovativegroup.agency>
**CC:**        Lori Sundermier <lori@innovativegroup.agency>, heather@acadianmed.com
               <heather@acadianmed.com>, Sherry Chavez <sherry@acadianmed.com>
**Attachments:** image002.png

Hi everyone,

I have shared your shipping number this afternoon so as soon as I get all of the updated shipping information, I will keep you posted.

Hoping to have more information on the masks in the morning.

Have a great night!
Camie

CLICK HERE FOR INSITE INTO OUR NEW HOSPITALITY COMPANY

**Camie Dunbar**
Experiential Director
p:  470.481.4800 ext:106   m: 786.236.0866
w:  InnovativeGroup.agency  e: Camie@innovativegroup.agency

---

6

32.     In compliance with Innovative's Invoice ACM2022, Acadian wired Innovative (through its agent Insite) its first payment to be applied to Invoice ACM2022, in the amount of $300,000.00.

33.     Acadian's April 15, 2020 payment of $300,000.00 against Invoice ACM2022 left a remaining balance of half, or $300,000.00.

34.     On April 30, 2020 Acadian wired Innovative (through its agent Insite) a payment of $356,064.00 to be applied to Invoice ACM2022.

35.     Acadian's April 30, 2020 payment (through Insite) of $356,064.00 covered the remaining balance of the $600,000.00 Invoice ACM2022 and paid an additional $56,064.00 to cover *in full* a separate Acadian Purchase Order AMC3885IG/Innovative Invoice ACM2027 in the amount of $56,064.00.

36.     Although Acadian provided full payment for Invoice ACM2022, Innovative never released the KN95 Order to Acadian.

37.     Acadian inquired with Innovative several times as to the status of the release of the KN95 Order. However, Innovative never provided Acadian with the location and pallet information to schedule a freight pickup.

38.     On May 13, 2020, Innovative sent Acadian its Invoice ACM2029, attempting to charge Acadian an astounding $140,514.80 in shipping costs for the KN95 masks. This charge was unreasonable and not in conformity with standard shipping costs.

39.     At no time did Acadian accept the $140,514.80 shipping costs invoice Innovative attempted to impose in its Invoice ACM2029.

40.     At no time did Innovative actually ship the KN95 Order for which it attempted to invoice Acadian $140,514.80 in shipping costs.

41.     Acadian attempted to work its own contacts to arrange its own transportation for the masks. At the same time, in good faith, Acadian worked to try to resolve the exorbitant shipping charges with Innovative on several occasions via several emails, conference calls, text messages, and phone calls. However, many of its attempts were left unreturned or unanswered. For instance, as the issue lingered, emails from Acadian on June 10 and June 24, 2020 were met with no response.

42.     When Innovative was responsive, during one of the conference calls which Acadian had with Lori Sundermier, VP of Finance and Administration for Innovative, Ms. Sundermier assured Acadian that this issue would be resolved. She also acknowledged the delivery delay which was causing Acadian to miss opportunities for sales at the same time as the market was returning to normal supply levels.

43.     At the same time, Acadian was working to source critical PPE supplies for various other hospital systems and non-health-related organizations as the COVID-19 pandemic deepened.

44.     At no time did Innovative follow up to advise Acadian that it was storing the KN95 Order in its warehouse.

45.     To the contrary, on June 10, 2020, Jared Shattuck emailed Acadian to advise: "The masks remain in storage in LA awaiting resolution."[1]

46.     Acadian demands the return of its $600,000.00 paid to Innovative in consideration for the purchase of the KN95 masks.

**Order of Defective Gowns Yielding Credit to Acadian**

47.     In order to fulfill a purchase order from the State of Louisiana for Level 1 hospital gowns, Acadian issued three purchase orders to Innovative on or about April 14, 2020. The three Acadian

---

[1] Referring to Los Angeles, and not Louisiana.

Purchase Orders (AMC3852AC, AMC3854AC, and AMC3848IN) collectively totaled 200,000 gowns. This order shall hereinafter be referred to as the "Level 1 Gowns Order."

48.     Innovative promised to timely ship the goods, however, this promise would later turn out to be untrue.

49.     Due to Innovative's failure to timely ship the goods as promised and the exorbitant estimated shipping costs Innovative had provided of $50,000 for Acadian Purchase Order AMC3852AC, Acadian found it necessary to engage its own shipping provider.

50.     Acadian solicited inspection and shipping assistance for the gowns from another PPE supplier that had been working with Acadian named Network 95 based in Huntington Beach, CA. Network95 had been supplying verified PPE to federal government agencies at the time.

51.     Actual shipping charges were issued by Network95 via Invoice N950172 (providing shipping charges for two containers and inspection of the gowns) totaling $9,000.00 ($41,000 lower than the exorbitant $50,000 Innovative quote for Acadian Purchase Order AMC3852AC). Acadian paid Network95 directly for this shipping charge and then took ownership of the gowns via UPS Freight Pro # 857349323 and Pro # 857349312.

52.     Network 95 suggested an inspection of the gowns be done prior to their arranging shipment for the gowns, which was conducted and found that the order was filled with defective gowns due to holes, rips, tears at the seams, poor quality control resulting in bad stitching, and other similar apparent defects.

53.     Upon request, Michael Reyngold from Network95, Acadian's PPE supplier, had commissioned a liaison in China to inspect the gowns. The liaison sent images of the failed gowns to Mr. Reyngold prior to receiving up the gowns into Network95's possession. The inspector found that the gowns failed at a rate of 9:60 gowns (or 15%).

54.     During this time, Mr. Reyngold and Ms. Reyes were in contact and advised Innovative about the 9:60 failure rate of the gowns.

55.     An email exchange between Michael Reyngold from Network95 and Innovative representative Jarred Shattuck shows an example of some of the defects in the gowns:



56.     On June 24, 2020, Innovative representative Jarred Shattuck offered via email to provide Acadian a replacement of 39,000 gowns due to the defects, which Acadian accepted.

57.     Again, Innovative never shipped the 39,000 replacement gowns or followed through on its "make-good" offer.

58.     Acadian therefore demands payment from Innovative of $115,050.00, which represents the reimbursement to Acadian of the 39,000 replacement gowns at the purchase price paid of $2.95 per gown.

59.     Acadian also seeks repayment of its shipping costs to pay for the defective gowns, in the *pro rata* amount of $1,350.00 considering the original shipping charges of $9,000.00 and the 15% fail rate of the 39,000 defective gowns.

### Orders of Lost and Delayed Surgical Masks

60.     Acadian's first order with Innovative started their rocky relationship.

61.     Acadian placed and paid an order on April 9, 2020 for surgical masks as a part of what was Acadian Purchase Order AMC3894AC, which was billed by Innovative under Invoice ACM2020. The Invoice ACM2020 in question was for 400,000 surgical masks at a cost of $0.70 each for a total of $280,000.00 including shipping. This order shall hereinafter be referred to as the "Level 2 Masks Order."

62.     These masks were to be delivered timely to fulfill a purchase order to a long-time Acadian hospital customer – Our Lady of the Lake in Baton Rouge, Louisiana.

63.     On April 15, 2020, 200,000 masks were delivered to Our Lady of the Lake and 16,000 masks were delivered to Get Pro Industrial. The remaining balance of the order of 184,0000 masks were to be shipped to Acadian's office in a timely manner via using their FedEx and UPS accounts.

64.     However, the remaining 184,000 surgical masks were delayed in shipping to Acadian from Invoice ACM2020.

65.     As part of the entire order being delayed, some 12 cases of 2,000 masks were initially lost by FedEx delivery. 11 of the 12 cases were ultimately delivered. The deliveries were sporadic and delayed, with various deliveries taking place on an ongoing basis until the delivery of the 11th of 12 cases of masks was made on April 30, 2020.

66.     To make up for the lost shipment of the 12th case of masks, Innovative issued or should have issued a credit to Acadian of $1,400.00 as compensation for the lost case (in the form of a "credit note").

67.     This $1,400.00 credit was never actually applied and so Acadian therefore demands the sum of $1,400.00 as compensation for the lost case of masks.

### Non-Conforming Surgical Masks

68.     In addition to the above lack of delivery and credit refunds for the surgical masks, Innovative's masks also failed to conform to the standards under which Innovative had marketed and sold the goods.

69.     Innovative's own third-party product testing report (provided by Shenzhen Academy of Metrology & Quality Inspection) was provided and revealed that the masks it had labeled and sold as "ASTM Level 2 surgical grade masks" did not in fact meet the medical requirements for ASTM Level 2 surgical grade masks due to their actual tested filtration rate.

70.     Innovative therefore knew or should have known that the surgical masks it marketed and sold as ASTM Level 2 surgical grade masks did not meet the standards for ASTM Level 2, but instead only the lower ASTM Level 1.

71.     Under these circumstances, Innovative's sale of these masks to Acadian as ASTM Level 2 masks constitutes fraud.

72.     Upon review of Innovative's own third-party product testing data, Michelle Bush, Materials Management Category Manager with Our Lady of the Lake hospital in Baton Rouge, Louisiana, did not accept the masks as being ASTM Level 2 surgical grade masks due to their failure to meet the required filtration standards. Thus, the hospital identified the masks as non-compliant with the ASTM Level 2 standard and was forced to utilize the masks as ASTM Level 1 medical masks instead of the higher grade ASTM Level 2 surgical grade masks.

73.     Ms. Bush emailed Olivia "Mandy" Rogers Sharai, Acadian's sales consultant, about the masks' failure to meet the ASTM Level 2 testing standards:



74.     Following this email, Acadian approached Innovative to obtain ASTM Level 2 testing.

75.     ASTM Level 2 testing was needed as Acadian had purchased what it reasonably believed, based on reliance on Innovative's promises, backed by Innovative's documents, invoices, text, and email communications, that it had purchased ASTM Level 2 surgical grade masks. In reliance on these promises, Acadian then, in turn, marketed that it had access to ASTM Level 2 masks and was attempting to sell such ASTM Level 2 masks, but would not do so unless the testing results would verify any masks it would sell conformed to the ASTM Level 2 standard.

76.     However, Innovative told Acadian that it would not pay for any further testing.

77.     This failure to obtain ASTM Level 2 testing threatened to jeopardize Acadian's longstanding relationship with its customers.

78.     Innovative's marketing and sale to Acadian of what it labeled "ASTM Level 2" masks but were in fact ASTM Level 1 masks constitutes fraud.

**<u>Wrongful Shipping Charges</u>**

79.     On May 13, 2020, during a delivery to Acadian's office, UPS charged Acadian $2,569.00 to release 12 boxes of goods being delivered at that time. Acadian then informed Innovative of the additional charge and requested a credit be issued. Since Innovative was actually responsible for the shipping charges, it issued a Credit Note to Acadian accordingly.

80.     The Credit Note generated by Innovative shows as follows:



www.InnovativeGroup.agency

# CREDIT NOTE

ACADIAN MEDICAL CONSULTANTS
9605 JEFFERSON HWY
RIVER RIDGE LA 70123

Date
May 27, 2020

Credit Note Number
CN-0006

Reference
SHIPPING CREDIT

INNOVATIVE SUITES, LLC
9350 S DIXIE HIGHWAY
PENTHOUSE ONE
MIAMI FL 33156
USA

| Description | Quantity | Unit Price | Amount USD |
|---|---|---|---|
| SHIPPING CREDIT FOR ASTM LEVEL 2 MASKS INV ACM2020 | 1.00 | 2,569.00 | 2,569.00 |
| | | Subtotal | 2,569.00 |
| | | TOTAL USD | 2,569.00 |
| | | Less Credit to Invoice(s) | 2,569.00 |
| | | REMAINING CREDIT | 0.00 |

81.     However, Acadian has never been actually reimbursed for this wrongful charge and is therefore owed the amount of $2,569.00.

82.     The above credits were never applied and therefore Acadian demands the additional sum of $2,569.00 in compensation for the Credit Note.

## Lost Opportunities

83.     Due to Innovative's lack of delivery, delayed delivery, poor quality of product, exorbitant shipping charges, non-conforming goods, misrepresentations, and requests for payment in full prior to order fulfillment, the circumstances described above hindered Acadian's ability to obtain and deliver PPE products for Purchase Orders.

84.     Due to the non-conforming masks that failed to fulfill the ASTM Level 2 requirements, Acadian's clients would not purchase further ASTM Level 2 masks from Acadian unless it could provide ASTM Level 2 testing results, which Innovative refused to obtain and which Acadian was not able to provide.

85.     In addition, due to Innovative's non-conforming goods, Acadian needed to source PPE from other suppliers to fulfill purchase orders that were supposed to have been fulfilled by Innovative.

86.     At the same time, Innovative was also holding on to Acadian's money sent to Innovative to fill its purchase orders. This money was therefore not made available to Acadian to purchase other PPE from other suppliers, causing lost business opportunities for Acadian.

87.     Additionally, Acadian lost purchase orders, received cancellations of placed orders, and lost customers' confidence and future orders as a result of the facts discussed herein.

## Count 1 – Breach of Contract
### (Against Innovative Global, as to the KN95 Order)

88.     Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

89.     On April 14, 2020, Acadian submitted purchase order AMC3853AC to Innovative for the purchase of 300,000 KN95 masks at a total cost of $600,000.00, which responded through its agent Insite, with its own invoice (ACM2022) for the purchase of 300,000 KN95 masks at a total cost of $600,000.00, creating a contract between the parties.

90.     In compliance with the parties' contract, on April 15, 2020, Acadian wired an initial partial payment of $300,000.00 for the KN95 Order, with the remaining balance of $300,000.00 paid on April 30, 2020.

91.     Also on April 15, 2020, Acadian emailed its UPS International Account Number to Innovative, pursuant to the terms of the Insite Invoice.

92.     Innovative failed to release or ship the KN95 Order to Acadian, despite full payment, and receipt of Acadian's UPS International Account Number.

93.     Innovative breached the terms of the parties' contract vis-à-vis the KN95 Order by failing to release the KN95 Order despite full payment from Acadian.

94.     Acadian has been damaged as a direct and proximate result of Innovative's breach of the April 14, 2020 contract for the KN95 Order.

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court enter judgment against Defendant, Innovative Global, LLC for general and consequential damages, costs, interest, and any other relief as this Court deems proper and just to compensate Acadian for Innovative Global, LLC's breach of contract.

## Count 2 – Breach of Contract
### (Against Innovative Global, as to the Defective Gowns)

95.     Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

96.     Acadian submits that Innovative should be held liable for breach of contract based on its delivery of non-conforming and defective hospital gowns purchased by Acadian.

97.     Acadian has been damaged as a direct and proximate result of Innovative's breach of the contract for the hospital gowns.

98.     Acadian therefore demands payment from Innovative of $115,050.00, which represents the reimbursement to Acadian of the 39,000 replacement gowns at the purchase price paid of $2.95 per gown.

99.     Acadian also seeks repayment of its shipping costs to pay for the defective gowns, in the pro rata amount of $1,350.00 considering the original shipping charges of $9,000.00 and the 15% fail rate of the 39,000 defective gowns.

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court enter judgment against Defendant, Innovative Global, LLC for general and consequential damages, costs, interest, and any other relief as this Court deems proper and just to compensate Acadian for Innovative Global, LLC's breach of contract.

### Count 3 – Breach of Contract
### (Against Innovative Global, as to the Non-Conforming ASTM Level 2 Masks Order)

100.    Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

101.    On April 9, 2020, Acadian submitted purchase order AMC3894AC to Innovative for the purchase of 400,000 Level 2 surgical masks at a total cost of $280,000.00, which responded through its agent Insite, with its own invoice (ACM2020) for the purchase of 400,000 Level 2 surgical masks at a total cost of $280,000.00, including shipping, creating a contract between the parties.

102.    After a series of false starts, Innovative delivered certain masks. These masks, however, were not ASTM Level 2 as described in the Insite invoice. Rather, testing revealed that the masks were actually ASTM Level 1.

103.    Innovative breached the terms of the Level 2 Masks Order's contract by failing to deliver ASTM Level 2 Masks, and instead delivering a different product (ASTM Level 1 Masks).

104.    Specifically, Innovative should be held liable for breach of contract based on its delivery of non-conforming and deficient goods in supplying ASTM Level 1 masks instead of the ASTM Level 2 masks agreed to by Acadian.

105.    Acadian has been damaged as a direct and proximate result of Innovative's breach of the April 9, 2020 contract for the Level 2 Masks Order.

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court enter judgment against Defendant, Innovative Global, LLC for general and consequential damages, costs, interest, and any other relief as this Court deems proper and just to compensate Acadian for Innovative Global, LLC's breach of contract.

**Count 4 – Conversion**
**(Against Innovative Global and Insite, as to the KN95 Order,**
**Lost Case of Masks, and Wrongful Shipping Charges)**

106.    Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

107.    On April 14, 2020, Acadian submitted purchase order AMC3853AC to Innovative for the purchase of 300,000 KN95 masks at a total cost of $600,000.00, which responded through its agent Insite, with its own invoice (ACM2022) for the purchase of 300,000 KN95 masks at a total cost of $600,000.00, creating a contract between the parties.

108.    On April 15, 2020, Acadian wired an initial partial payment of $300,000.00 for the KN95 Order, with the remaining balance of $300,000.00 paid on April 30, 2020.

109.    Also on April 15, 2020, Acadian emailed its UPS International Account Number to Innovative, pursuant to the terms of the Insite Invoice.

110.    Innovative failed to release or ship the KN95 Order to Acadian, despite full payment, and receipt of Acadian's UPS International Account Number.

111.    Acadian made demand for either the KN95 Order, or the $600,000.00 payment, but Innovative refused and still refuses to deliver either the masks or the payment for same.

112.    To the extent Innovative failed to release or ship the KN95 Order to Acadian, it has converted the goods paid for (and/or owned) by Acadian or has otherwise converted Acadian's $600,000.00 payment and is therefore liable to Acadian for same.

113.    Acadian demands and is entitled to the sum of $600,000.00 as compensation for the KN95 Order.

114.    To the extent Innovative has not credited or repaid Acadian the $1,400.00 in compensation for the lost shipment of the 12th case of masks, Acadian demands and is entitled to the sum of $1,400.00 as compensation for the lost case of masks.

115.    To the extent Innovative has not credited or repaid Acadian the $2,569.00 in compensation for the Credit Note for the wrongful shipping charges, Acadian demands and is entitled to the sum of $2,569.00 in compensation for the Credit Note for the wrongful shipping charges.

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court enter judgment against Defendants, Innovative Global, LLC and Innovative Suites, LLC for general and consequential damages, costs, interest, and any other relief as this Court deems proper and just to compensate Acadian for Innovative's and Insite's conversion of Acadian's goods.

## <u>Count 5 – Fraud</u>
### <u>(Against Innovative Global and Insite, as to the ASTM Level 2 Masks Order)</u>

116.    Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

117.    Upon delivery of the Surgical Mask Order, Innovative's own third-party product testing report revealed that the masks Innovative had labeled and sold as "ASTM Level 2 surgical grade masks" did not in fact meet the medical requirements for ASTM Level 2 surgical grade masks due to their actual tested filtration rate.

20

118.    At all times applicable hereto, Innovative marketed and sold a series of Surgical Masks to Acadian, when it knew or should have known that the masks did not rise to the level of ASTM Level 2 surgical grade masks and instead, only met the standards for and could therefore only be used as ASTM Level 1 surgical masks.

119.    At all times applicable hereto, Innovative intended that Acadian rely on its misrepresentation that the aforementioned surgical masks met the ASTM Level 2 threshold.

120.    Innovative benefitted from the misrepresentations it made to Acadian with respect to the qualities of the Surgical Masks.

121.    Acadian would not have paid the purchase price paid to Innovative for the Surgical Masks had Acadian known that the masks did not meet the ASTM Level 2 surgical grade standard.

122.    Acadian was damaged as a direct result of Innovative's fraudulent misrepresentation regarding the Surgical Mask Order.

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court enter judgment against Defendants, Innovative Global, LLC and Innovative Suites, LLC for general and consequential damages, costs, interest, and any other relief as this Court deems proper and just to compensate Acadian for Innovative's and Insite's fraud.

### Count 6 – Violation of Florida Deceptive and Unfair Trade Practices Act
### (Against Innovative Global and Insite, as to the KN95 Order)

123.    Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

124.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. §501.204) renders it unlawful to engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

Case 1:22-cv-22155-KMM   Document 1   Entered on FLSD Docket 07/13/2022   Page 22 of 26


125.     At all times relevant hereto, Innovative solicited, advertised, offered, and provided goods (various types of PPE equipment) for sale in the State of Florida, and thereby was engaged in trade or commerce in the State of Florida as defined in Fla. Stat. §501.203.

126.     At all times relevant hereto, Acadian was a consumer as defined by Fla. Stat. §501.203.

127.     Innovative committed unconscionable, deceptive, and unfair trade practices and acts by knowingly and intentionally failing to ship the KN95 Order pursuant to the terms of the parties' agreement, and instead attempting to charge an additional $140,514.80 for shipping, despite being in possession of Acadian's UPS International Account Number.

128.     Acadian has suffered actual damages as a result of Innovative's unconscionable, deceptive, and unfair trade practices.

WHEREFORE, Plaintiff Acadian Medical Consultants, LLC requests that this Court enter an Order against Defendants Innovative Global, LLC, and Innovative Suites, LLC declaring that Defendants violated the Act and an injunction enjoining future violations of the Act pursuant to Section 501.211(1), Fla., actual damages for violation of the Act pursuant to Section 501.211(2), monetary damages, an award of attorneys' fees and costs pursuant to Sections 501.211(2) and 501.2105, Fla. Stat., and for such relief as this Court deems proper and just for Innovative's and Insite's violations of The Florida Deceptive and Unfair Trade Practices Act.

### Count 7 – Violation of Florida Deceptive and Unfair Trade Practices Act
### (Against Innovative Global and Insite, as to the ASTM Level 2 Masks Order)

129.     Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

130.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. §501.204) renders it unlawful to engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

131.    At all times relevant hereto, Innovative solicited, advertised, offered, and provided goods (various types of PPE equipment) for sale in the State of Florida, and thereby was engaged in trade or commerce in the State of Florida as defined in Fla. Stat. §501.203.

132.    At all times relevant hereto, Acadian was a consumer as defined by Fla. Stat. §501.203.

133.    Innovative committed unconscionable, deceptive, and unfair trade practices and acts by knowingly and intentionally marketing, labeling and selling ASTM Level 1 masks as "ASTM Level 2 surgical grade masks" – despite having conducted their own testing, which revealed that the masks failed to meet the required filtration standards for Level 2.

134.    Acadian has suffered actual damages as a result of Innovative's and Insite's unconscionable, deceptive, and unfair trade practices.

WHEREFORE, Plaintiff Acadian Medical Consultants, LLC requests that this Court enter an Order against Defendants Innovative Global, LLC, and Innovative Suites, LLC declaring that Defendants violated the Act and an injunction enjoining future violations of the Act pursuant to Section 501.211(1), Fla., actual damages for violation of the Act pursuant to Section 501.211(2), monetary damages, an award of attorneys' fees and costs pursuant to Sections 501.211(2) and 501.2105, Fla. Stat., and for such relief as this Court deems proper and just for Innovative's and Insite's violations of The Florida Deceptive and Unfair Trade Practices Act.

## Count 8 – Unjust Enrichment
### (Against Innovative Global and Insite)

135.    Acadian Medical incorporates by reference each of the above and foregoing allegations as if fully set forth herein.

136.    Acadian asserts a claim for unjust enrichment against Innovative Global and Insite solely in the alternative, in the event Innovative Global contends the subject contract is invalid.

137.    In the event Innovative Global contends the subject contract is invalid and/or Acadian is unsuccessful in its underlying claims, Acadian submits that Innovative and/or Insite have been unjustly enriched by receiving sums of money from Acadian for goods that Innovative and/or Insite never provided to Acadian, were defective, or otherwise non-conforming.

138.    Acadian therefore seeks judgment in its favor in the full amount of which Innovative Global and/or Insite were unjustly enriched, to the sum of $720,319.00 in consideration of the KN95 masks ($600,000.00), the defective gowns ($115,050.00, which represents the 39,000 replacement gowns at the purchase price paid of $2.95 per gown), shipping for the defective gowns (in the *pro rata* amount of $1,350.00 considering the original shipping charges of $9,000.00 and the 15% fail rate of the 39,000 defective gowns), the undelivered surgical masks ($1,400.00), and the Credit Note for the lost case of masks ($2,569.00).

139.    Acadian further seeks an amount that the Court would find appropriate to compensate it for the lost business opportunities discussed herein.

140.    This cause of action is pled in the alternative, consistent with prior rulings of courts of the Southern District of Florida.

> "[A] party may plead in the alternative for relief under an express contract and for unjust enrichment. But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid… In addition, it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails. Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature."

*See*, *e.g.*, *Smith v. Jackson*, No. 16-81454-CIV, 2017 WL 1047033, at *6 (S.D. Fla. Mar. 20, 2017); *quoting Matorella v. Deutsche Bank Nat. Trust Co.*, 931 F.Supp.2d 1218, 1227-28 (S.D. Fla. 2013).

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court enter judgment against Defendants, Innovative Global, LLC and Innovative Suites, LLC for general and consequential damages, costs, interest, and any other relief as this Court deems proper and just to compensate Acadian for Innovative and Insite's unjust enrichment.

## **WAIVER OF JURY DEMAND**

141.    Acadian Medical respectfully waives its right to a trial by jury and elects to proceed to a bench trial before the presiding judge.

WHEREFORE, Plaintiff, Acadian Medical Consultants, LLC respectfully requests that this Court find its Verified Complaint good and sufficient and, after due proceedings, enter judgment in its favor and against Defendants, Innovative Global, LLC and Innovative Suites, LLC for all damages as are reasonable in the premises, including court costs, interest from date of judicial demand until paid, and all general and equitable relief this Court deems proper and just.

Respectfully submitted:

**Nory Acosta-Lopez, P.A.**

/s/Nory Acosta-Lopez
**NORY ACOSTA-LOPEZ**, FL Bar No. 20637
121 Alhambra Plaza, Suite 1500
Coral Gables, Fl 33134
Phone: 305.204.9984
Nory@Nal.Legal

– and –

**Sternberg, Naccari & White, LLC**

/s/M. Suzanne Montero
**M. SUZANNE MONTERO**, La. Bar No. 21361
(*pro hac vice* application forthcoming)
**MICHAEL S. FINKELSTEIN**, La. Bar No. 35476

(*pro hac vice* application forthcoming)
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Phone: 504.324.2141
Fax:   504.534.8961
suzy@snw.law | michael@snw.law

**Counsel for Acadian Medical Consultants, LLC**